■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BIENVENIDO CASTILLO, Appellant.—Judgment, Supreme Court, New York County (Jeffrey M. Atlas, J.), rendered January 11, 1990, convicting defendant, after a jury trial, of murder in the first degree, intentional murder in the second degree, two counts of felony murder in the second degree, robbery in the first degree, kidnapping in the second degree, criminal possession of a weapon in the second and third degrees, criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the third and fourth degrees and sentencing him as follows: concurrent sentences of 25 years to life imprisonment for the four murder counts; 12½ to 25 years for robbery and 8⅓ to 25 years for kidnapping, each term to run consecutive to all other terms

except for the felony murder counts based upon those felonies; 4 to 12 years for sale of narcotics to run consecutive to all counts other than the narcotics possession counts for which defendant received concurrent terms of 4 to 12 years and 3 to 9 years; 5 to 15 years for second degree weapon possession to run consecutive to the sentence imposed on the narcotics sale count; and 2⅓ to 7 years for third degree weapon possession to run consecutive to all counts other than the sentences imposed for weapons possession and the narcotics possession counts, unanimously modified, on the law, to reverse the convictions for kidnapping and felony murder based upon the kidnapping, to vacate those sentences and to dismiss those counts, and otherwise affirmed.

The People's evidence established that defendant murdered an undercover narcotics police officer in order to thwart an investigation into the narcotics operation he and his codefendants were conducting at an uptown Manhattan apartment. The People proved beyond a reasonable doubt that defendant knew the victim was a police officer and that defendant intended to kill him (Penal Law § 125.27 [1] [a] [i]; § 125.25 [1]). Two prosecution witnesses testified that defendant admitted that he knew the victim was a police officer before he shot him. Furthermore, the jury could infer from the circumstances of the shooting that defendant intended to shoot the victim because he was a police officer. A second undercover police officer at the scene of the crime testified that before his partner was shot, both officers had refused to sample defendant's cocaine, defendant's cohort found a gun on him, both officers attempted to escape, and defendant's cohort yelled out, "policia, policia!"

Although the evidence against defendant was otherwise sufficient to sustain these convictions (People v Thompson, 72 NY2d 410, 413), his convictions for kidnapping and felony murder based upon the kidnapping cannot stand (People v Cassidy, 40 NY2d 763). Defendant's act of holding a gun to Hoban's head was integral to his criminal responsibility for both the robbery and kidnapping such that independent criminal responsibility may not be fairly attributed to both crimes (People v Cassidy, supra, at 767). Furthermore, since the manner of detention was not so egregious as to warrant application of the exception to the merger doctrine, we hold that the kidnapping charge merged with the robbery charge (People v Cassidy, supra, at 767), and consequently, defendant's convictions for kidnapping and felony murder based upon the kidnapping must be reversed.

Defendant's codefendant, Manuel Pineda-Ogando, was separately charged with hindering prosecution in the first degree and convicted of hindering prosecution in the third degree. A separate indictment charged codefendant Flavio Prophete with felony murder, robbery, kidnapping, and sale and possession of narcotics. After testifying at trial, Prophete was acquitted of all charges. Contrary to defendant's argument on appeal, his joinder with Prophete and Pineda-Ogando was entirely proper. First, in granting the People's motion to consolidate the indictments, the court properly concluded that defendant's and Pineda-Ogando's acts were "so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident" (CPL 40.10 [2] [a]; 200.40 [1]). Second, although defendant contends that he was unduly prejudiced because evidence of defendant's prior uncharged drug dealings would have been inadmissible but for the joint trial, the evidence adduced would have been admissible as necessary background information and to explain defendant's relationship with a prosecution witness (see, People v Steinberg, 170 AD2d 50). Furthermore, the court instructed the jury regarding the limited relevance of testimony about defendant's prior drug dealings. Finally, there is no merit to defendant's argument that Prophete's defense was in irreconcilable conflict with his own defense (People v Mahboubian, 74 NY2d 174, 184).

Defendant's argument that the court abused its discretion by denying his request to replace a sworn juror who allegedly became grossly unqualified to serve is also unavailing. The juror, who informed the court that his brother and sister-in-law had been robbed by three young Hispanics during the course of the trial, unequivocally stated that he would not consciously allow the robbery to interfere with his promise to deliberate impartially, and gave an equivocal response regarding the effect of the robbery on his subconscious. Accordingly, the effect of the robbery on the juror's ability to be impartial was only speculative and the court correctly concluded that the standard that it must be " 'obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict' " (People v Buford, 69 NY2d 290, 298; CPL 270.20 [1] [b]) was not satisfied.

Furthermore, there is no merit to defendant's contention that he was deprived of a fair trial as a result of three separate discovery violations. The court did not abuse its discretion in refusing to preclude a witness from testifying because of the late delivery of that witness' cooperation agree-

ment. Furthermore, since the late delivery of the seriologist's report regarding defendant's blood sample prejudiced defendant only to the extent that counsel did not have sufficient warning that the prosecution would seek to connect defendant's blood to the crime scene, the court, in fashioning an appropriate sanction for the late delivery, did not abuse its discretion in deciding that the People would be limited to comparing defendant's blood to the blood recovered at any locations other than the crime scene (*People v Witherspoon,* 156 AD2d 306, 308, *affd* 77 NY2d 95, *cert denied sub nom. Carter v New York,* — US —, 113 L Ed 2d 662). Finally, the People were not required to disclose the prior oral statement of their ballistics expert which was not based upon a scientific test or analysis.

Lastly, we hold that the imposition of consecutive sentences for defendant's commission of murder, robbery, the narcotics offenses, and weapon possession was proper since these crimes were committed by separate acts (Penal Law § 70.25; *People v Underwood,* 52 NY2d 882, 883). Furthermore, since defendant was motivated to kill a police officer merely to prevent detection of his own criminal activity and subsequently showed no remorse, the imposition of the maximum permissible terms for all of defendant's crimes, with the exception of his narcotics offenses, did not constitute an abuse of discretion. Concur— Sullivan, J. P., Milonas, Wallach and Kassal, JJ.