903 P.2d 228

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Michael CONTRERAS, Defendant–
Appellant.**

No. 21455.

Supreme Court of New Mexico.

Aug. 16, 1995.

Rehearing Denied Sept. 22, 1995.

Sammy J. Quintana, Chief Public Defender, Sue Anne Herrmann, Patrick L. Lopez, Assistant Appellate Defenders, Santa Fe, for appellant.

Tom Udall, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for appellee.

## OPINION

RANSOM, Justice.

Michael Contreras was convicted on one count of felony murder under NMSA 1978, Section 30-2-1(A)(2) (Repl.Pamp.1994), one count of armed robbery under NMSA 1978, Section 30-16-2 (Repl.Pamp.1994), one count of tampering with evidence under NMSA 1978, Section 30-22-5 (Repl.Pamp.1994), and one count of unlawful taking of a vehicle under NMSA 1978, Section 66-3-504 (Repl. Pamp.1994). The trial court sentenced him to life imprisonment for the felony murder conviction, nine years for the armed robbery

conviction to run consecutively to the life term, and eighteen months each for tampering with evidence and unlawful taking of a vehicle, both of the latter sentences to run concurrently with the armed robbery term. Contreras appeals to this Court pursuant to SCRA 1986, 12–102(A)(2) (Repl.Pamp.1992) (direct appeal from life sentence), arguing that the trial court violated the constitutional prohibition against double jeopardy by sentencing him for both the felony murder conviction and the underlying predicate felony conviction. Finding that the trial court did violate Contreras's right to be free from multiple punishments, we reverse the armed robbery conviction. We affirm the other convictions and sentences.

*Facts.* At 10:30 p.m. in the evening of May 14, 1992, cab driver Peter Doran was dispatched to a gas station to pick up a passenger who had given his name as Frank. About fifteen to thirty minutes later two men heard Doran call for help and discovered that Doran had been stabbed. The men telephoned for help, and Doran was taken to the hospital where he died. The cause of death was a five to six inch stab wound that had pierced Doran's right lung.

Early the next morning the cab company reported to the police that Doran and his cab were missing. Later that morning a representative of the cab company went with the police to an apartment complex to identify what turned out to be Doran's cab. Missing from the cab were Doran's wallet and a cellular phone. After further investigation the police found the keys to the cab and a bloody fish-filleting knife on the roof of the apartment complex. The knife had a five and three-quarter inch blade and blood stains consistent with Doran's blood.

Police later received a tip that Contreras had killed Doran. Police contacted Contreras's employer, the Seattle Fish Company, and discovered that Contreras filleted fish for the company using knives identical to the one discovered at the apartment complex. The general manager testified that Contreras did not work after May 10 and did not call in to excuse his absence until May 14. On that date Contreras requested his paycheck but was told that it would not be available until May 22. On May 20 Contreras again called and requested his paycheck. The police arrested Contreras on May 22 when he arrived at the fish company.

Contreras gave a voluntary statement when he was arrested and testified at trial that he did stab Doran. He stated that on May 14 he had called a cab to take him to his mother's apartment. When the cab arrived, he entered on the driver's side, carrying with him in a pouch around his waist a knife from work that he was to deliver to his mother. He testified that during the cab ride Doran made sexual advances toward him and that he had stabbed Doran from behind in order to stop the sexual advances. After being stabbed, Doran stopped the cab and exited. Contreras then took the cab and drove to the apartment complex where he parked the cab. He admits that he took a cellular phone from the cab, but he testified that he did not know what happened to Doran's wallet. After exiting the cab, Contreras threw the keys and the knife on the roof. He later gave the cellular phone to a friend in repayment of a debt.

The prosecution presented evidence that Contreras had been separated from his wife for approximately one year prior to the murder and that there had been financial problems throughout their marriage. Employees for the fish company testified that Contreras constantly asked to borrow money and requested advances on his paycheck. On the day of the murder Contreras's wife picked him up because she needed him to sign a tax return check and cash it at a bank. Contreras asked for some of the money, but his wife refused. Contreras testified that his landlord had given him two days to pay rent and that he wanted the money to pay rent and to "have fun spending it." Contreras was quite upset after his wife refused to give him money. He went home and slept most of the day. That evening he stabbed and killed Doran.

■ *Substantial evidence supports the felony murder conviction.* Contreras argues that there was not substantial evidence to support his conviction for felony murder. Relying on California cases, he argues that to be guilty of felony murder the accused must

form the specific intent to rob concurrent with the murder. *See, e.g., People v. Hayes,* 52 Cal.3d 577, 276 Cal.Rptr. 874, 906, 802 P.2d 376, 408–09 (1990) (in bank) (upholding jury instruction that made it clear jury could convict of murder during commission of robbery only if it concluded defendant had formed intent to rob before striking fatal blow), *cert. denied,* 502 U.S. 958, 112 S.Ct. 420, 116 L.Ed.2d 440 (1991). Citing his own testimony that he stabbed Doran to ward off unwanted sexual advances and that he decided to take the cab and cellular phone only after the stabbing was complete, Contreras contends that there was not sufficient evidence from which a rational jury could conclude that he had the intent to rob Doran at the time he stabbed him.

■ In determining whether evidence is sufficient to support a conviction, we must view the evidence "in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *State v. McAfee,* 78 N.M. 108, 110, 428 P.2d 647, 649 (1967). Applying that standard of review to this case, we conclude there was substantial evidence to support Contreras's conviction for felony murder.

The State presented evidence from several sources that Contreras was in desperate need of money and that on the day of the murder Contreras had been denied money by his wife and his employer. When Contreras called for a cab, he gave a false name. When the cab arrived, Contreras entered directly behind Doran, carrying a concealed knife. Finally, he stabbed Doran from behind, drove off with the cab immediately after Doran exited, stole Doran's cellular phone, and, inferentially, stole his wallet. All of this evidence supports the inference that Contreras intended to rob Doran at the time he stabbed him.

The jury was instructed that to find Contreras guilty of felony murder, it had to find he "caused the death of Peter Doran *during* the commission of armed robbery." (Emphasis added.) We will presume the jury followed this instruction. *See* SCRA 1986, 13–2002 (Repl.Pamp.1991) (duty to follow instructions). The fact that the jury returned a guilty verdict after receiving this instruction indicates to us that it did not believe Contr-

eras's testimony that the robbery was done as an afterthought. Based on the above stated evidence, the jury rationally could have concluded beyond a reasonable doubt that Doran's death occurred during the commission of an armed robbery. Therefore, we will not disturb the felony murder conviction.

*Consecutive sentences for felony murder and the underlying felony violates the Double Jeopardy Clause.* Contreras also argues on appeal that the trial court violated the constitutional guarantees embodied in the Double Jeopardy Clause. *See* U.S. Const. amend. V ("No person shall … be subject for the same offense to be twice put in jeopardy of life or limb."). Specifically, Contreras contends that it was unconstitutional for the trial court to sentence him for both felony murder and the underlying felony of armed robbery.

■ *General double jeopardy principles.* The Double Jeopardy Clause protects against both successive prosecutions and multiple punishments for the same offense. *Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991). This case involves multiple punishments. In *Swafford* this Court adopted a two-part inquiry to determine whether multiple punishments have been imposed unconstitutionally. *Id.* at 13, 810 P.2d at 1233. The first part of the inquiry involves the question whether the conduct underlying the offenses is unitary. *Id.* Because the Double Jeopardy Clause does not prohibit imposition of multiple punishments for "discrete acts violative of the same statute," it is only "if it reasonably can be said that the conduct is unitary … [that] one must move to the second part of the inquiry." *Id.* at 14, 810 P.2d at 1224.

■ Once we have determined that the conduct is unitary, we must answer the question whether our state legislature intended multiple punishments for unitary conduct. *Id.* Unless the legislature expressly provides for multiple punishments, we must determine legislative intent by applying the test established in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See Swafford,* 112 N.M. at 14, 810 P.2d at 1224.

■ *Contreras's conduct was unitary.* Notwithstanding his "afterthought" argument, Contreras urges that the conduct in this case nonetheless was unitary. Conduct is separate and distinct and not unitary if "events are sufficiently separated by either time or space," *id.* at 13, 810 P.2d at 1223, or "the quality and nature of the acts or . . . the objects and results involved" are distinguishable, *id.* at 14, 810 P.2d at 1224. Applying these guidelines to the facts in the record, consistent with the instructions on which the verdict was rendered, we find that the armed robbery and the murder occurred simultaneously. Almost immediately after Contreras stabbed Doran, he took the cab and its contents. There was no separation of time and place. The deadly weapon defined the quality and nature of the armed robbery. Further, the objects and results of the stabbing and theft clearly united. Therefore, we can reasonably conclude that Contreras's conduct was unitary. The State does not contest that conclusion.

By contrast, in *State v. McGuire,* 110 N.M. 304, 309, 795 P.2d 996, 1001 (1990), this Court held that under the facts of the case conduct for kidnapping and criminal sexual penetration was not unitary. In *McGuire* the defendant abducted a woman for the purpose of raping her, took her to a remote location, and then raped her. The Court said that the kidnapping was completed at the time the defendant took the woman, but the criminal sexual penetration did not occur until the defendant caused the woman to engage in sexual intercourse. *Id.* The two events were sufficiently separated by time and space to be considered not unitary. *See id.; see also State v. Ortega,* 112 N.M. 554, 571, 817 P.2d 1196, 1213 (1991) (citing *McGuire* and holding that conduct for kidnapping and murder was separate and distinct and not unitary); *cf. State v. Ah Choy,* 70 Haw. 618, 780 P.2d 1097, 1100 (1989) (holding that conduct for robbery and attempted murder was separate and distinct and not unitary under

facts of case). Because Contreras's conduct was unitary, we must answer the second inquiry.

■ *The legislature did not intend multiple punishments.* The state legislature did not expressly authorize multiple punishments in this case. *But cf. Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (stating that when legislature "specifically authorizes cumulative punishment under two statutes . . . a court's task of statutory construction is at an end"). We thus apply the *Blockburger* test to determine legislative intent. Under this test the Court must determine "whether each provision requires proof of a fact the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. If "one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes." *Swafford,* 112 N.M. at 14, 810 P.2d at 1224.[1] A statute is subsumed within another if all of the elements of that statute are included within the elements of the other statute. *Id.* at 9, 810 P.2d at 1229. Only if one statute is not subsumed within the other do we look at other indicia of legislative intent to determine whether the legislature intended multiple punishments. *Id.* at 14, 810 P.2d at 1224.

■ In this case Contreras could not have been convicted of felony murder unless the State proved all of the elements of armed robbery; the elements of armed robbery thus are subsumed by the elements of felony murder in the course of an armed robbery. The State argues that the felony murder statute does not enumerate armed robbery as an element of felony murder, and therefore the statutes address distinct crimes. Proof of the armed robbery, however, is a necessary element of proof of the felony murder. *Cf. Whalen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980) ("[P]roof of rape is a necessary element of proof of the felony murder. . . ."). We will not require the legislature to draft

---

1. In *Swafford* we did not answer whether the *Blockburger* test is one of constitutional significance or one of statutory construction. Ultimately, the best statement of the test may be that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

separate statutes for each felony that would give rise to felony murder. That would be an unconscionable burden on the legislative process.

In *Whalen* the U.S. Supreme Court addressed whether the offense of rape was subsumed within the offense of felony murder. The Court examined the intent of Congress in passing a felony murder statute and observed that "[a] conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape." 445 U.S. at 694, 100 S.Ct. at 1439. Based on this observation, the Court held that the defendant could not be punished for both felony murder and the underlying felony. While we have the ultimate authority to interpret our own state statutes and are not necessarily bound by the analysis in *Whalen*, we do not see any significant difference between our felony murder statute and the statute discussed in *Whalen*. Application of a different rationale is unwarranted by anything unique to our statutes. Furthermore, our legislature provides an enhanced sentence of life imprisonment for felony murder, but it provides a sentence of less than thirty years (earliest eligibility for parole from life imprisonment as a result of a capital felony, NMSA 1978, Section 31–21–10(A) (Repl. Pamp.1994)) for murder in the second degree and armed robbery, even when run consecutively, *see* NMSA 1978, § 31–18–15 (Repl. Pamp.1994) (basic sentences for noncapital felonies). This tends to rebut the State's argument that the compound and predicate felony statutes punish distinct offenses.

Accordingly, we hold that when, as here, one's conduct is unitary, one cannot be convicted of and sentenced for both felony murder and the underlying felony. To hold otherwise would be to "prescrib[e] greater punishment than the legislature intended" in violation of the Double Jeopardy Clause. *See Hunter*, 459 U.S. at 366, 103 S.Ct. at 678. Because the offense of armed robbery is subsumed within the offense of felony murder, we do not need to consider other indicia of legislative intent. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1224. Based upon the rationale developed in *Whalen* and *Swafford*, we overrule *State v. Stephens*, 93 N.M. 458,

463, 601 P.2d 428, 433 (1979) (concluding that consecutive sentences for felony murder and the underlying felony of armed robbery did not violate prohibition against double jeopardy).

Our holding is not unsupported. The majority of our sister states that have addressed this issue have held that one cannot be convicted of both felony murder and the predicate felony. *See, e.g., Connolly v. State*, 539 So.2d 436, 441 (Ala.Crim.App.1988) (felony murder and robbery), *cert. denied*, Sup.Ct. No. 88–463 (Ala. Feb. 24, 1989); *Richie v. State*, 298 Ark. 358, 767 S.W.2d 522, 524 (1989) (same); *Harling v. United States*, 460 A.2d 571, 572–73 (D.C.1983) (same); *Tarpkin v. State*, 236 Ga. 67, 222 S.E.2d 364, 368 (1976) (same); *Sivak v. State*, 112 Idaho 197, 201, 731 P.2d 192, 206 (1986) (same); *Williams v. State*, 426 N.E.2d 662, 670 (Ind. 1981) (same); *State ex rel. Wikberg v. Henderson*, 292 So.2d 505, 509 (La.1974) (felony murder and attempted robbery); *Newton v. State*, 280 Md. 260, 373 A.2d 262, 266 (1977) (same); *Shabazz v. Commonwealth*, 387 Mass. 291, 439 N.E.2d 760, 762 (1982) (felony murder and robbery); *People v. Wilder*, 411 Mich. 328, 308 N.W.2d 112, 116 (1981) (same); *State v. Hodges*, 384 N.W.2d 175, 183 (Minn.Ct.App.) (same), *aff'd as modified on other grounds*, 386 N.W.2d 709 (Minn.1986); *Meeks v. State*, 604 So.2d 748, 753 (Miss.1992) (felony murder and kidnapping); *State v. Hubbard*, 123 N.J.Super. 345, 303 A.2d 87, 90 (App.Div.) (felony murder and robbery), *certification denied*, 63 N.J. 325, 307 A.2d 98 (1973); *People v. Castillo*, 178 A.D.2d 113, 576 N.Y.S.2d 855, 856 (1991) (felony murder and kidnapping), *appeal denied*, 79 N.Y.2d 998, 584 N.Y.S.2d 453, 594 N.E.2d 947 (1992); *State v. Thompson*, 280 N.C. 202, 185 S.E.2d 666, 675 (1972) (felony murder and breaking and entering); *Perry v. State*, 764 P.2d 892, 898 (Okla.Crim.App. 1988) (felony murder and robbery); *State v. Tucker*, 315 Or. 321, 845 P.2d 904, 911 (1993) (in banc) (same); *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569, 570 (1981) (same); *State v. Powers*, 526 A.2d 489, 495 (R.I.1987) (same); *Ex parte Jewel*, 535 S.W.2d 362, 365 (Tex.Crim.App.1976) (same); *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1, 12–13 (1991) (felony murder and arson); *State v. Gordon*,

111 Wis.2d 133, 330 N.W.2d 564, 570 (1983) (felony murder and kidnapping); *Cook v. State*, 841 P.2d 1345, 1352 (Wyo.1992) (felony murder and robbery); *cf. State v. Hoffman*, 227 Neb. 131, 416 N.W.2d 231, 241 (1987) (holding defendant could not be convicted of vehicular homicide and drunk driving when drunk driving was predicate offense to vehicular homicide).

Contreras's conviction for armed robbery is reversed. It is not enough to say that the armed robbery merges with the felony murder or to allow the trial court to impose concurrent sentences for armed robbery and felony murder. As we explained in *State v. Pierce*, 110 N.M. 76, 87, 792 P.2d 408, 419 (1990), the second conviction is itself punishment that has potential adverse consequences. Thus allowing the conviction to stand or allowing sentencing on that conviction would impose multiple punishments in violation of the Double Jeopardy Clause.

■ *The inquiry into prior charges did not constitute plain error.* Contreras also argues on appeal that the prosecution wrongfully asked Contreras about prior charges that he unlawfully took a motor vehicle. Contreras had in fact been charged with the unlawful taking of a motor vehicle, but that charge was never pursued and did not result in a conviction. Contreras's attorney, however, did not object to the prosecution's inquiry and thus did not preserve the error for review. Contreras argues that admission of that testimony is reviewable as plain error.

■ Under SCRA 1986, 11–103(D) (Repl.Pamp.1994), this Court may review evidentiary questions although not preserved if the admission of the evidence constitutes plain error. The plain-error rule, however, applies only if the alleged error affected the substantial rights of the accused. *State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). "We must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (quoting *State v. Barraza*, 110 N.M. 45, 49, 791 P.2d 799, 803 (Ct.App.), *cert. denied*, 109 N.M. 704, 789 P.2d 1271 (1990)).

In this case even if it was error to admit the questionable testimony, evidence supporting Contreras's guilt is overwhelming. This one error does not create any doubt about the firmness of the verdict. The real issues of the case were not obscured by this minor error, and the admission of the evidence did not affect substantial rights of Contreras. Thus we will not use the plain error rule to review the validity of the admission of that testimony.

*Conclusion.* The conviction of felony murder is supported by substantial evidence and is therefore affirmed. Further, the multiple punishment for the felony murder conviction and the underlying felony of armed robbery violated the Double Jeopardy Clause, and thus the armed robbery conviction must be vacated. Finally, admission of testimony regarding previous charges against Contreras did not constitute plain error, and the convictions for unlawful taking of a vehicle and tampering with evidence are affirmed. We leave it to the discretion of the trial court to determine whether the sentences for unlawful taking of a vehicle and tampering with evidence are to run concurrently or consecutively with the sentence for felony murder.

**IT IS SO ORDERED.**

BACA, C.J., FRANCHINI and MINZNER, JJ., and EUGENIO S. MATHIS, District Judge, concur.