This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38319**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TARSILO GUTIERREZ-ROBLES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Victor E. Sanchez, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant Tarsilo Gutierrez-Robles appeals his conviction for aggravated driving under the influence of intoxicating liquor or drugs (DWI), contrary to NMSA 1978, Section 66-8-102(D)(3) (2016). Defendant argues that (1) the district court erred in denying his motion for a continuance; (2) he received ineffective assistance of counsel; (3) the district court committed plain error when it allowed an officer to testify about his reading of the New Mexico Implied Consent Act to Defendant in Spanish; (4) there was insufficient evidence to support Defendant's willful refusal to submit to a breath test; (5)

the district court erred in admitting his blood alcohol test results; and (6) there was cumulative error. We affirm.

**BACKGROUND**

**{2}** Sergeant Jimmy Docherty was on patrol when he saw a vehicle he suspected had a suspended or expired registration. While following the vehicle, he saw it make a wide left turn, go up onto the grass, then come back on the paved roadway. Sergeant Docherty then initiated a traffic stop. He testified that upon approaching Defendant, he smelled an odor of alcohol. While speaking with Defendant, Sergeant Docherty observed that Defendant was slurring his words, seemed clumsy, and had red eyes, and there was an open can of beer next to him. He also testified that Defendant spoke a mix of English and Spanish.

**{3}** Sergeant Docherty began to conduct standardized field sobriety tests but realized there was either an impairment problem or a language barrier because Defendant could not or would not follow instructions; he called another officer, Justin Cobb, to assist. Officer Cobb testified that after arriving at the scene, he attempted to conduct field sobriety tests on Defendant. He was unable to conduct a full investigation, however, because Defendant only spoke Spanish with a minor amount of English. Nevertheless, Officer Cobb smelled an odor of alcohol on Defendant and noticed that Defendant was not able to stand properly—he was swaying back and forth. Because neither Sergeant Docherty nor Officer Cobb could communicate with Defendant, they called Deputy Bryan Vannatta, who spoke Spanish.

**{4}** When Deputy Vannatta arrived, he also observed that Defendant had slurred speech and bloodshot watery eyes, and that there was a strong odor of alcohol coming from him. Deputy Vannatta testified that he spoke Spanish with Defendant and Defendant stated that he understood the officer's instructions. After learning Defendant had a physical problem with his arm and leg, Deputy Vannatta conducted alternate field sobriety tests on Defendant, none of which he was able to complete as instructed. Deputy Vannatta confirmed that he instructed Defendant in Spanish. Defendant was placed under arrest and taken to the state police office, where Deputy Vannatta read the Implied Consent Act in Spanish to Defendant from a card provided by his department. Deputy Vannatta requested that Defendant take a breath test, but Defendant did not consent. Officer Cobb subsequently obtained a search warrant for a blood test. Defendant was charged with aggravated DWI.

**{5}** At trial, the State and defense stipulated to the admission of Deputy Vannatta's lapel camera, which documented the officer's interaction with Defendant. During a recess at trial, a certified court interpreter previewed the video. Before the jury returned, the interpreter informed the court that "the Spanish spoken by the officer is not Spanish." Defendant then requested a continuance to obtain an expert to testify about Deputy Vannatta's Spanish proficiency. The district court denied Defendant's request but ruled that the video would be played without sound for the jury and that Defendant could cross-examine Deputy Vannatta on his Spanish-speaking abilities. The jury was

instructed to determine whether Defendant was unable "either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle" and whether he "refused to submit to chemical testing[.]" From that criteria, the jury found Defendant guilty of aggravated DWI (impaired to the slightest degree).[1] *State v. Pickett*, 2009-NMCA-077, ¶¶ 1, 6, 146 N.M. 655, 213 P.3d 805 (distinguishing DWI based on the "impaired to the slightest degree" standard from "per se" DWI, based on a breath or blood alcohol concentration (BAC) of .08 or more). Defendant appeals.

## DISCUSSION

### I.      Denial of Continuance

**{6}**     Defendant argues that the district court abused its discretion when it denied his motion for a continuance. "The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{7}**     Our Supreme Court articulated seven factors that courts should consider when evaluating a request for a continuance:

> [1] the length of the requested delay, [2] the likelihood that a delay would accomplish the movant's objectives, [3] the existence of previous continuances in the same matter, [4] the degree of inconvenience to the parties and the court, [5] the legitimacy of the motives in requesting the delay, [6] the fault of the movant in causing a need for the delay, and [7] the prejudice to the movant in denying the motion.

*State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. Applying the *Torres* factors to this case, we conclude the district court did not abuse its discretion in denying Defendant's motion.

**{8}**     Regarding the first factor—the length of the requested delay—Defendant did not request a specific amount of time for the continuance. Because we have no indication of how much time would be needed, this factor has little or no application here. *Compare id.* ¶ 15 (holding that a requested delay of a week or less to properly serve a witness and compel the witness to testify weighed in favor of granting a continuance), *with State v. Salazar*, 2006-NMCA-066, ¶¶ 24, 26, 139 N.M. 603, 136 P.3d 1013 (holding that the denial of a continuance was appropriate where the delay was likely at least two months); *see also Salazar*, 2007-NMSC-004, ¶ 21 ("[The d]efendant did not request a

---

[1]Defendant was also convicted of two petty misdemeanor offenses—driving without insurance, contrary to NMSA 1978, Section 66-5-205 (2013), and driving with an open container, contrary to NMSA 1978, Section 66-8-138(B) (2013)—but has not appealed those convictions.

specific amount of time for delay, but presumably enough time to conduct further witness interviews, possibly have the [v]ictim evaluated to determine competency to testify, and time to investigate."). Regarding the second factor—the likelihood that a delay would accomplish the movant's objectives—a sufficient delay would arguably have allowed Defendant to obtain an expert.

**{9}** As for the third factor, Defendant's trial had been set four times in fifteen months. The district court had sua sponte ordered a continuance on three occasions to resolve older cases, and the State requested the fourth continuance. Because these continuances were not made at Defendant's request, we do not weigh this factor against him. *Cf. Torres*, 1999-NMSC-010, ¶ 15 (noting that, where the request for a continuance was the defendant's first, and thus no indication the continuance was sought as a dilatory tactic, there was support for granting the request).

**{10}** Nevertheless, because Defendant's request came midway through trial, the fourth factor—the degree of inconvenience to the parties and the court—weighs heavily against granting the request. *See State v. Gonzales*, 2017-NMCA-080, ¶ 36, 406 P.3d 534 (stating that "we presume resetting the trial date on the day trial is supposed to begin is inconvenient for the parties and for the court"); *see also State v. Brazeal*, 1990-NMCA-010, ¶ 16, 109 N.M. 752, 790 P.2d 1033 ("Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." (internal quotation marks and citation omitted)). While Defendant relies on *Torres* for the proposition that it was the State's burden to demonstrate that granting the motion would create a significant inconvenience for the court or either party, we believe the language Defendant relies upon stems from material differences between this case and *Torres* that renders *Torres* distinguishable. *See* 1999-NMSC-010, ¶ 17. The defendant in *Torres* requested a continuance on the second day of trial for the purpose of serving and compelling the appearance of a witness who was "essential to the defense theory," after learning the sheriff's department had not served the witness, even though defense counsel had delivered a subpoena to the sheriff's department at least ten days before trial. *Id.* ¶¶ 11-12. The district court in *Torres* was thus required to balance "[the] defendant's constitutional right to compulsory process, with the court's interest in controlling its docket and the public's interest in the efficient administration of justice without unnecessary delay[,]" *id.* ¶ 10 (citation and footnote omitted), and our Supreme Court concluded that "the trial court's generalized concerns about expediency are not sufficient to override [the defendant's] constitutional right to compulsory process." *Id.* ¶ 17. Here, in contrast, Defendant made no showing that the expert he hoped to secure was essential to his defense theory, nor did he make any effort before trial to secure an expert.

**{11}** As for the fifth and sixth factors—whether the continuance was requested in bad faith and the fault of the movant in causing a need for the delay—there is no indication that Defendant requested the continuance in bad faith, but we conclude Defendant is responsible for causing the need for the delay. Defendant's counsel explained to the

court that he had watched the video with Spanish speakers before trial and knew the Spanish "wasn't great." Defense counsel was on notice, before trial began, that Deputy Vannatta's Spanish proficiency was a potential avenue of defense and, as the district court observed, the defense could reasonably have foreseen the need to challenge Deputy Vannatta's Spanish-speaking ability at trial.

**{12}**  Finally, Defendant has not shown that he was prejudiced. *See Salazar*, 2007-NMSC-004, ¶ 16 ("In addition to meeting the *Torres* factors, [the d]efendant must show that the denial of the continuance prejudiced him.").

> No more prejudice need be shown than that the trial court's order may have made a potential avenue of defense unavailable to the defendant. We do not ask whether the evidence was critical but, instead, whether the defendant made a plausible showing of how the [evidence to be gathered or developed by additional time] would have been both material and favorable to his defense.

*Id.* (alteration, internal quotation marks, and citations omitted).

**{13}**  Defendant argues that the denial of the continuance deprived him of the opportunity to retain an expert to challenge Deputy Vannatta's ability to speak Spanish and that, without an expert, he was deprived of the ability to challenge Deputy Vannatta's ability to speak Spanish altogether. We reject this argument for two reasons.

**{14}**  First, Defendant was not completely deprived of his ability to challenge Deputy Vannatta's Spanish-speaking ability; he pursued this defense by cross-examining Deputy Vannatta on this very issue. Defendant's request for a continuance came in the morning, and the district court specifically stated that Deputy Vannatta would be allowed to testify later that day and "will be subject to cross-examination about his Spanish-speaking abilities." Defense counsel cross-examined Deputy Vannatta on whether he was "a certified court interpreter," his level of Spanish education, and whether he was certain Defendant understood him. Thus, the record refutes Defendant's claim that the denial of the continuance made a potential avenue of defense altogether unavailable.

**{15}**  Moreover, Defendant's assertion that he would have been able to undermine Deputy Vannatta's testimony is unsupported by any showing that an expert witness would have given substantially favorable evidence that Deputy Vannatta's reading of the Implied Consent Act in Spanish was deficient or that Defendant did not understand the deputy's instructions regarding the field sobriety tests. Consequently, we conclude that Defendant has failed to establish that an expert's testimony would have been material and favorable to his defense. *See Torres*, 1999-NMSC-010, ¶ 12 (concluding that the defendant established prejudice where he "made a sufficient proffer that the testimony would have been both material and favorable to his defense"). For these reasons, we perceive no abuse of discretion in the district court's denial of Defendant's request for a continuance.

## II.    Ineffective Assistance of Counsel

**{16}**    Defendant next argues that (1) the denial of the continuance created a presumption of ineffective assistance of counsel or, alternatively, (2) counsel's failure to obtain an expert prior to trial was ineffective.

**{17}**    As for his first argument, Defendant, relying on *State v. Hernandez*, 1993-NMSC-007, 115 N.M. 6, 846 P.2d 312, contends that "the denial of a continuance precluded [him] from raising a potential avenue of defense to challenge [Deputy] Vannatta's ability to speak Spanish, thereby creating a presumption of prejudice from the denial." *See id.* ¶ 19 ("If the denial of a continuance precludes the defendant from raising a potential avenue of defense, a presumption of prejudice is appropriate."). We, however, already rejected Defendant's contention that the denial of the continuance altogether foreclosed a potential avenue of defense, and, for these same reasons, Defendant's related ineffective assistance claim fails.

**{18}**    As for his second argument, to make a prima facie case of ineffective assistance, Defendant must establish that defense counsel's performance fell below the standard of a reasonably competent attorney, and that, as a result, the defense was prejudiced. *See Brazeal*, 1990-NMCA-010, ¶¶ 23-24. Defendant's ineffective assistance of counsel claim is grounded in the fact that his attorney did not obtain an expert to challenge Deputy Vannatta's Spanish-speaking ability before trial. However, Defendant has offered no argument concerning the element of prejudice separate and apart from the prejudice he claims resulted from the denial of his request for a continuance. For the same reasons discussed above, we cannot conclude that Defendant made a prima facie case of ineffective assistance of counsel here. *See id.* Notwithstanding this, Defendant "is free to pursue habeas corpus proceedings where he may actually develop the record with respect to these issues." *State v. Arrendondo*, 2012-NMSC-013, ¶ 44, 278 P.3d 517; *see also State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" (internal quotation marks and citation omitted)).

## III.    Admission of Testimony

**{19}**    Defendant also argues that the district court erred when it allowed Deputy Vannatta to testify about his statements in Spanish concerning the Implied Consent Act. Defendant acknowledges that he did not object to this testimony at trial, and thus, we review its admission for plain error. *State v. Contreras*, 1995-NMSC-056, ¶ 23, 120 N.M. 486, 903 P.2d 228 (stating that under Rule 11-103(E) NMRA, appellate courts "may review evidentiary questions although not preserved if the admission of the evidence constitutes plain error").

**{20}**    Deputy Vannatta testified that after he determined Defendant was impaired, Defendant was arrested and taken to the station, where he read Defendant the Implied Consent Act in Spanish. Deputy Vannatta explained that officers are "provided cards by

our agency, who gets them from the state level, and we read off of that verbatim." Deputy Vannatta confirmed that the card he read to Defendant was in Spanish. Deputy Vannatta stated that he asked Defendant twice whether he consented to taking the breath test. The State continued by asking whether Deputy Vannatta had explained to Defendant that if he did not take the test, he could have his driving privileges revoked, to which Deputy Vannatta stated, "Yes, that is part of the implied consent card."

**{21}** Defendant argues that Deputy Vannatta's testimony was not relevant, in violation of Rule 11-401(A) NMRA (stating that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence"), and that it was unfairly prejudicial, in violation of Rule 11-403 NMRA ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]"). Initially, we fail to see how Deputy Vannatta's testimony regarding the Implied Consent Act could be considered irrelevant given that Defendant's arrest for aggravated DWI was based on his failure to give consent under the Implied Consent Act, *see State v. Romero*, 1974-NMCA-015, ¶ 18, 86 N.M. 99, 519 P.2d 1180 (stating that "[r]elevancy is that which tends to establish a material proposition"), and we cannot characterize Deputy Vannatta's testimony as unfairly prejudicial. *See State v. Martinez*, 2021-NMSC-002, ¶ 101, 478 P.3d 880 ("Evidence is unfairly prejudicial if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." (internal quotation marks and citation omitted)).

**{22}** Defendant's arguments rely, again, on the certified court interpreter's statement that "the Spanish spoken by the officer is not Spanish." From this, Defendant concludes that Deputy Vannatta's reading of the Implied Consent Act was somehow incomprehensible. This conclusion is not borne out in the record. Considered in context, the interpreter's remarks were very general:

> We requested to see the video, your honor, as it's customary for us to ask to see the video before it's presented to the jury to not only observe it but observe the quality of the sound. . . . After considering the video and actually hearing the sound bites in the video, your honor, . . . there is English of course going on, but a lot of the conversation between the Defendant and the police officer is in a foreign language. . . . We also observed and heard and after we counseled with each other the level of Spanish that was spoken doesn't meet the standards—the contemporary standard of communication, in other words, the Spanish spoken by the officer is not Spanish.

It is unclear whether these statements refer to Exhibit 1, which depicts Defendant's field sobriety tests, Exhibit 2, which shows Officer Vannatta reading the Implied Consent Act to Defendant from a card, or both. And as the State points out, the interpreter never commented on Deputy Vannatta's *reading* of the Implied Consent Act in Spanish or indicated that the officer's reading was actually flawed or deficient. Simply put,

Defendant has not persuaded us that Deputy Vannatta failed to properly read the Implied Consent Act to Defendant in Spanish.

**{23}** Moreover, when the interpreters were asked if they had an objection to interpreting the English spoken in the video for Defendant, one responded, "Interpreting the English language, not at all, your honor, and Spanish, . . . *Defendant understands the Spanish*. The interpreter only raised the very obvious issue of the Spanish language spoken for the benefit of the jurors because I don't know how many of them speak or understand Spanish." (Emphasis added.) From the interpreter's remarks, we cannot conclude that Deputy Vannatta did not speak Spanish when reading the Implied Consent Act or that Defendant did not understand him. Accordingly, we hold that Defendant has not established any error in the admission of Deputy Vannatta's testimony, much less plain error.

## IV.     Sufficiency of the Evidence

**{24}** Defendant next contends that the State failed to present sufficient evidence that he willfully refused to submit to a breath test. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{25}** Defendant maintains that the State's evidence regarding his willful refusal is insufficient because he "neither agreed nor disagreed to take the breath test[.]" Deputy Vannatta testified that he asked Defendant twice, in Spanish, whether he would submit to a breath test and both times Defendant failed to answer. Rather, Defendant responded, "Why do you have me? Why did you stop me?" Based on our case law, however, "anything short of full and unequivocal consent is a refusal except in very limited circumstances"—circumstances that are not present here. *See State v. Vaughn*, 2005-NMCA-076, ¶ 41, 137 N.M. 674, 114 P.3d 354 (recognizing exceptions for conditional consents and initial refusals cured by subsequent consents). Therefore, we conclude there is sufficient evidence that Defendant willfully refused to take the breath test to support his conviction for aggravated DWI.

## V.     Admission of the Blood Alcohol Test Results

**{26}** Defendant also argues that the district court erred by admitting his blood alcohol test results because the evidence was insufficient to establish that his blood was drawn by an authorized individual under NMSA 1978, Section 66-8-103 (1978). During trial, Defendant objected to the admission of the blood alcohol test results, arguing that

"Officer Cobb cannot testify as to the qualifications of the phlebotomist" and that "[w]ithout having the phlebotomist here who was mentioned in the police report we can't establish chain of custody and therefore, [the expert] cannot testify as to the results of the test." Defendant later clarified that this was a foundational issue and stated, "We have a very strict rule about who can draw blood, and it is . . . essentially somebody who is certified to take blood from people. Officer Cobb is not, and he can't testify as to the credentials of those people who took the blood." The district court overruled the objection.

**{27}** Assuming without deciding that Defendant preserved the issue he now raises on appeal and the district court erred in admitting the results of the blood draw, *but see State v. Franklin*, 2020-NMCA-016, ¶ 24, 460 P.3d 69 (stating that the individual who performed the blood draw is not required to testify and the necessary foundation may be established by an officer who witnessed the blood draw), we review Defendant's claim for harmless error. *See State v. Astorga*, 2015-NMSC-007, ¶ 42, 343 P.3d 1245. "Absent a constitutional violation, we look to whether there is a reasonable probability that the error affected the verdict." *Id.* ¶ 43. "[The d]efendant bears the initial burden of demonstrating that he was prejudiced by the error." *Id.*

**{28}** While Defendant's brief in chief thoroughly discussed the State's failure to provide evidence on the blood drawer's identity and qualifications, he offered no argument concerning prejudice. Defendant addressed prejudice for the first time in his reply brief, and then only summarily, stating, "Under the circumstances of the case, the [blood alcohol] test results—the only scientific evidence at trial—affected the verdict beyond a reasonable probability." Putting aside the fact that we do not consider issues raised for the first time in an appellant's reply brief, *State v. Druktenis*, 2004-NMCA-032, ¶ 122, 135 N.M. 223, 86 P.3d 1050, Defendant's failure to support or develop his argument is fatal to his claim. It is not our role to develop Defendant's arguments for him, nor will we guess at what his arguments may be. *See State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622. Because Defendant has not met his burden to demonstrate prejudice, we must conclude, even if it was error to admit Defendant's blood alcohol test results, it was harmless.

## VI. Cumulative Error

**{29}** Finally, Defendant argues that the cumulative impact of the errors at trial were so prejudicial that a reversal of his convictions is required. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Guerra*, 2012-NMSC-014, ¶ 47, 278 P.3d 1031 (internal quotation marks and citation omitted). Although we have assumed one error in this appeal, it presented no basis for reversal, and we find no merit to Defendant's claim that he was deprived of a fair trial. Accordingly, we hold there was no cumulative error in this case.

## CONCLUSION

**{30}** For the foregoing reasons, we affirm Defendant's conviction for aggravated DWI.

**{31} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**